IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JUAN E. ORTIZ, by and through his next friend, RAMÓN L. ORTIZ,<br>14305 Lorain Avenue<br>Cleveland, Ohio 44111<br><br>RAMÓN L. ORTIZ,<br>14305 Lorain Avenue<br>Cleveland, Ohio 44111<br><br>and<br><br>ALMA I. PERÉZ,<br>14305 Lorain Avenue<br>Cleveland, Ohio 44111<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN KAZIMER<br>In both his official and personal capacities,<br>Cleveland Department of Public Safety<br>601 Lakeside Avenue, Room 230<br>Cleveland, Ohio 44114<br><br>and<br><br>DAN F. CRISAN<br>In both his official and personal capacities,<br>Cleveland Department of Public Safety<br>601 Lakeside Avenue, Room 230<br>Cleveland, Ohio 44114<br><br>Defendants. | CASE NO. _____<br><br>JUDGE _____<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## NATURE OF THE ACTION

1.      This is a civil-rights action brought under 42 U.S.C. §§ 1983 and 1985(3). It also asserts state-

law causes of action. This case alleges that Cleveland police officer Brian Kazimer violated the

Fourth and Fourteenth Amendments of the United States Constitution by using excessive force to forcibly detain Juan Ortiz without just cause and causing him physical and emotional injuries and distress. Defendant Kazimer's partner, Dan Crisan failed to intervene to prevent this attack.

2.      While Defendant Kazimer was acting in the scope of his employment and under color of state law, he unlawfully attacked and detained Juan Ortiz, a child with Down syndrome. This unreasonable seizure directly and proximately caused Juan's injuries and the injuries of his parents.

3.      While Defendant Crisan was acting in the scope of his employment and under color of state law, he failed to intervene to prevent Defendant Kazimer's attack on Juan Ortiz. This failure to intervene was a direct and proximate cause of Juan's injuries.

## PARTIES

4.      Plaintiff Juan Ortiz resides in Cleveland, Ohio.

5.      Plaintiff Ramón Ortiz is Juan's next friend and father. Ramón resides in Cleveland, Ohio.

6.      Plaintiff Alma Peréz is Juan's mother. Ms. Peréz resides in Cleveland, Ohio.

7.      Defendant Brian Kazimer is a Cleveland police officer. At all times material to the allegations in this Complaint he was acting in his capacity as a police officer employed by the Cleveland Division of Police and was acting under color of state law.

8.      Defendant Dan F. Crisan is a Cleveland police officer. At all times material to the allegations in this Complaint he was acting in his capacity as a police officer employed by the Cleveland Division of Police and was acting under color of state law.

## JURISDICTION AND VENUE

9.      Jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which provides for attorney and expert fees for vindication of civil-rights claims, is asserted under 28 U.S.C. §§ 1331 and 1343.

10.     Jurisdiction over state claims is asserted under 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendants and venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims took place within the jurisdiction of the U.S. District Court for the Northern District of Ohio.

## FACTUAL BACKGROUND

12.      On or about August 16, 2010, Patrol Officers Brian Kazimer #844 and Dan Crisan #263 of the Cleveland Division of Police were on duty driving patrol car #111. They received a report that Timothy Krall was robbed of his wallet under the railroad tracks at Lorain Avenue and West 143rd Street.

13.      Shortly thereafter, the officers were advised by radio that Nina Kennedy, manager of the West Terrace Apartments, called 911 to report that two males approached her and gave her a wallet. They claimed they had found it on the sidewalk by one of the apartment buildings. Ms. Kennedy gave the police a description of the two males who had approached her as white, one in his 40s wearing a red shirt and the other in his 50s wearing a blue shirt. It was later determined that these men had no involvement in the crime and had indeed found the wallet as indicated.

14.      Juan and his parents live in the West Terrace Apartments. When the incident began, Juan was sitting on the sidewalk next to his apartment building playing with his Walkman® radio. He was wearing a red t-shirt and jeans. Juan is a male child with Down syndrome and attendant speech and learning disorders. He is of Puerto Rican descent. At the time of the incident, Juan was 4'11" tall and weighed 118 pounds. He was 16, but appeared much younger. He posed no threat to the officers or to the public. He did not match the description of either suspect, or any of the other different descriptions received by police dispatch. No reasonable police officer could mistake Juan for a middle-aged white man, and it was objectively unreasonable to do so.

15.     The officers pulled into the apartment complex and began shouting at Juan. Juan who neither understands nor speaks English well, was terrified and fearful. He ran to his parents, who were out in the front of the apartment building. The officers chased Juan on foot.

16.     Neither Juan nor his parents had any idea why the police were chasing Juan.

17.     Catching up with the fleeing child, Defendant Kazimer tackled and slammed Juan into his father's car. Defendant Kazimer used his weight to pin Juan against the car. Defendant Kazimer is substantially larger and stronger than Juan. Juan remained terrified and fearful. Additional cars arrived on the scene.

18.     As these officers detained Juan, Ramón explained that his son has Down syndrome and pleaded with the officers to let Juan go. Ramón tried to put his hand under his son's face to protect his skin from the heat of the car but Defendant Kazimer refused to permit it. When Ms. Perez tried to intervene to protect her son, pleading with them not to hurt her "baby," but Defendant Kazimer shoved her away. Both parents were in fear for Juan's safety and well-being. Other family and friends on the scene told the officers the Juan had Down syndrome. The officers nevertheless continued to abuse Juan, handcuffed him, and stood him next to the patrol car as if he had done something wrong. Juan remained terrified and fearful.

19.     Ramón Ortiz continued to explain to the officers that his son had Down syndrome. Defendant Kazimer said, "I don't care." He then said, "you're lucky we didn't shoot him" and told Mr. Ortiz to "shut the fuck up." This malicious abuse of power and disrespect for members of the public attempting to prevent further harm to the handicapped child Juan is shocking to the conscience. These threats led Juan and his parents to be terrified and fearful.

20.     For more than 20 minutes, the officers detained Juan and kept him from his parents. The officers refused Mr. Ortiz's pleas to be near and comfort his son.

21.     Juan was finally released when the officers finally determined what any reasonable officer would have known simply from looking at Juan: he did not match the description of the suspects and had no involvement in the crime.

22.     After the incident, Juan's parents took him to the hospital where he received medical treatment for chest pain and bruising. He was later treated for a suprapubic abscess he sustained as a result of the attack. Defendant Kazimer had burned Juan's skin by holding him against the hood of the hot car. By slamming and tackling Juan and pinning him to this hot car (all without any cause to do so), Defendant Kazimer caused physical harm to Juan. This harm required surgical intervention, with the attendant risks, pain, and suffering. (*See* photo, below.)



23.     A reasonable officer would not have initiated the seizure or used the kind of force that Defendant Kazimer used against Juan. Defendant Kazimer attacked and detained Juan without probable cause. He used a grossly unnecessary amount of force to detain a small mentally handicapped child, which was unjustifiable under the circumstances. The amount of force used to accomplish the detention was clearly excessive and objectively unreasonable under Fourth amendment seizure principles. Detective Kazimer acted in an unprofessional manner towards Juan, his parents, and other bystanders who were explaining Juan's handicap and language limitations. All of these actions caused damages to Juan and his parents.

24.     A reasonable officer would not stand by and permit a fellow officer to abuse a handicapped child. Defendant Crisan was in a position to observe Defendant Kazimer's unconstitutional conduct and had a duty to intervene to protect Juan and prevent the damages that occurred as a result of the unlawful attack, seizure, and detention. Defendant Crisan failed to do so, breaching his duty to Juan and causing him damages.

25.     On August 17, 2010, Ramón Ortiz, on behalf of Juan, filed a complaint with the Cleveland Department of Safety Office of Professional Standards.

26.     On November 9, 2010, the civilian Police Review Board sustained Mr. Ortiz's complaint regarding the conduct that injured Juan.

27.     The perpetrators for which the officers had been searching were apprehended. Jordan Temple, a 20-year old white male (height 5'10", weight 160), and Richard Smiley, Jr. Smiley, a 22-year old white male (height 6'0", weight 210), were charged with robbery and kidnapping and are currently incarcerated. No reasonable officer could have mistaken Juan for either of the perpetrators.

28.     At the time of the seizure and during the subsequent detention of Juan by the police officers, Defendant officers did not have in their possession any warrant issued by any judge, court, or magistrate authorizing Juan's seizure or detention. No such warrant had been issued.

29.     Defendants, individually and in concert with others, acted under color of law in their official capacity to deprive Juan of his right to freedom from illegal seizure of his person and his right to freedom from unlawful arrest or detention. These rights are secured to him by the Fourth and Fourteenth Amendments and were clearly established as of August 16, 2010.

30.     Since being attacked and berated by Defendant Kazimer, Juan's ability to perform and enjoy his usual activities has been impaired. He has suffered severe emotional distress, sleeplessness, and related emotional anxiety as a result of his mistreatment. He awakens at night and paces the house. If he sees a police officer, he has particular trouble sleeping that night. He compulsively bites his index finger out of anxiety brought on by the attack. If he hears a siren, he locks himself in his room. He has also experienced intestinal distress as a result of the attack. His physical injuries were due to the unreasonable and unnecessary force thrust upon his person by Defendant Kazimer. His mental and emotional injuries are due to being terrorized by the attack the Defendant Kazimer perpetrated and Defendant Crisan failed to prevent.

31.     As a direct and proximate result of the intentional and/or negligent acts of the Defendants, Juan sustained severe mental and physical pain and suffering and injury in an amount to be determined at trial.

32.     Juan is entitled to compensatory damages for the harms inflicted upon him. And he is entitled to punitive damages for the unconscionable conduct he was forced to endure at the hands of Defendants.

33.     As a direct and proximate result of the intentional and/or negligent acts of the Defendants, Mr. Ortiz and Ms. Peréz sustained severe mental and emotional pain and suffering and injury in an amount to be determined at trial.

34.     Mr. Ortiz and Ms. Peréz are entitled to compensatory damages for the harms inflicted upon them by the mistreatment of their son. And they are entitled to punitive damages for the unconscionable conduct they and their son were forced to endure at the hands of Defendant Kazimer.

## COUNT 1
### Fourth and Fourteenth Amendment violation under 42 U.S.C. § 1983 against Defendant Kazimer in his official and personal capacities for unreasonable seizure and excessive use of force on behalf of Juan

51.     Plaintiffs incorporate all previous allegations by reference.

52.     Defendant Kazimer seized Juan without probable cause and used excessive force to terrorize him. These actions by Defendant Kazimer led to physical, mental, and emotion damage to Juan.

53.     As a direct and proximate result of Defendant Kazimer's unlawful conduct, Juan suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

54.     Juan is entitled to punitive damages based on Defendant Kazimer's egregious conduct.

## COUNT 2
### Fourth and Fourteenth Amendment violation under 42 U.S.C. § 1983 against Defendant Crisan in his official and personal capacities for failure to intervene and protect Juan from unreasonable seizure and excessive use of force by Defendant Kazimer on behalf of Juan

55.     Plaintiffs incorporate all previous allegations by reference.

56.     Defendant Crisan had a duty to intervene to protect Juan and prevent Defendant Kazimer's infringement of Juan's constitutional rights.

57.     Defendant Crisan observed or had reason to know that Defendant Kazimer would use or was using excessive force against Juan. Defendant Crisan had the means and the reasonable opportunity to intervene and prevent the harm from occurring, but he failed to do so.

58.     Defendant Crisan is liable for the preventable harm caused by the actions of Defendant Kazimer because Defendant Crisan observed or had reason to know that excessive force was being used and that Juan was being unjustifiably seized. Any reasonable law-enforcement officer would have intervened to assist Juan, as numerous witnesses and bystanders did. Defendant Crisan's failure to do so was extreme and outrageous conduct.

59.     As a direct and proximate result of Defendant Crisan's failure to protect Juan from Defendant Kazimer's brutal and unwarranted attack, Juan suffered and will continue to suffer economic and non-economic damages for which Defendant Crisan is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

60.     Juan is entitled to punitive damages based on Defendant Crisan's egregious conduct.

### COUNT 3
**Intentional infliction of emotional distress against Defendant Kazimer on behalf of Juan**

61.     Plaintiffs incorporate all previous allegations by reference.

62.     In conducting himself as he did, Defendant Kazimer either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to Juan.

63.     Defendant Kazimer's conduct in attacking and detaining a handicapped child without probable cause was extreme and outrageous. It went beyond all possible bounds of human decency and was such that it could be considered intolerable in civilized society.

64.     As a direct and proximate result of Defendant Kazimer's unlawful conduct, Juan suffered and will continue to suffer mental anguish so serious and of a nature that no reasonable man could be expected to endure it and for which Defendant Kazimer is liable.

65.     Juan is entitled to punitive damages based on Defendant Kazimer's egregious conduct.

## COUNT 4
### Negligent infliction of emotional distress against Defendant Kazimer on behalf of Juan

66.     Plaintiffs incorporate all previous allegations by reference.

67.     Juan was subjected to physical peril at the hands of Defendant Kazimer. As a direct and proximate result of Defendant Kazimer's unlawful conduct, Juan suffered and will continue to suffer serious mental anguish for which Defendant Kazimer is liable.

## COUNT 5
### Battery against Defendant Kazimer on behalf of Juan

68.     Plaintiffs incorporate the previous allegations by reference.

69.     Defendant Kazimer engaged in the above-described actions intending to cause the harmful contact and the harmful contact resulted. Defendant Kazimer intended to throw Juan on the hood of the police car, to use his body weight to pin the boy to the hood of the car, and to subsequently handcuff Juan. These offensive touchings were unlawful and unwanted.

70.     As a direct and proximate result of Defendant Kazimer's unlawful conduct, Juan suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

71.     Juan is entitled to punitive damages based on Defendant Kazimer's egregious conduct.

## COUNT 6
### False arrest against Defendant Kazimer on behalf of Juan

72.     Plaintiffs incorporate the previous allegations by reference.

73.     Defendant Kazimer deprived Juan of his liberty without lawful justification.

74.     As a direct and proximate result of Defendant Kazimer's unlawful conduct, Juan suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

75.     Juan is entitled to punitive damages based on Defendant Kazimer's egregious conduct.

## COUNT 7
### Negligence against Defendants Kazimer and Crisan on behalf of Juan

76.     Plaintiffs incorporate the previous allegations by reference.

77.     Defendants Kazimer and Crisan owed Juan a duty of case at the time of the incident. In committing the previously described acts and omissions, each Defendant negligently breached said duty of care, which directly and proximately resulted in injuries and damages to Juan.

78.     As a direct and proximate result of Defendants' unlawful conduct, Juan suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including but not limited to mental, emotional, and physical pain and suffering.

## COUNT 8
### Civil liability for criminal conduct under Ohio Rev. Code § 2307.60 against Defendant Kazimer on behalf of Juan

79.     Plaintiffs incorporate the previous allegations by reference.

80.     The conduct complained of above constitutes criminal acts on the part of Defendant Kazimer. These crimes include, but are not limited to,

      a.  assault (Ohio Rev. Code § 2903.13(A));

      b.  menacing (Ohio Rev. Code § 2903.22(A));

      c.  kidnapping (Ohio Rev. Code §§ 2905.01(A)(3) and (B)(2));

      d.  abduction (Ohio Rev. Code § 2905.02(A)(2));

      e.  unlawful restraint (Ohio Rev. Code § 2905.03(A));

      f.  disorderly conduct (Ohio Rev. Code §§ 2917.11(A)(1), (A)(2), and (A)(5));

      g.  interference with custody (Ohio Rev. Code § 2919.23(A)(1)); and

      h.  interfering with civil rights (Ohio Rev. Code § 2921.45(A)).

81.     As a direct and proximate result of Defendant Kazimer's criminal conduct, which showed a spirit of ill-will, hatred, and wanton disregard of Juan's rights, Juan suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including but not limited to mental, emotional, and physical pain and suffering, as well as punitive damages.

## COUNT 9
### Battery against Defendant Kazimer on behalf of Ms. Peréz

82.     Plaintiffs incorporate the previous allegations by reference.

83.     Defendant Kazimer engaged in the above-described actions intending to cause the harmful contact and the harmful contact resulted. Defendant Kazimer intended to shove Ms. Peréz as she endeavored to protect her son. This offensive touching was unlawful and unwanted.

84.     As a direct and proximate result of Defendant Kazimer's unlawful conduct, Ms. Peréz suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including, but not limited to, mental and emotional pain and suffering.

85.     Ms. Peréz is entitled to punitive damages based on Defendant Kazimer's egregious conduct.

## COUNT 10
### Civil liability for criminal conduct under Ohio Rev. Code § 2307.60 against Defendant Kazimer on behalf of Juan's parents

86.     Plaintiffs incorporate the previous allegations by reference.

87.     The conduct complained of above constitutes criminal acts on the part of Defendant Kazimer. These crimes include, but are not limited to,

      a.   menacing (Ohio Rev. Code § 2903.22(A)); and

      b.   interference with custody (Ohio Rev. Code § 2919.23(A)(1)).

88.    As a direct and proximate result of Defendant Kazimer's criminal conduct, which showed a spirit of ill-will, hatred, and wanton disregard of Juan's parents' rights, Mr. Ortiz and Ms. Peréz suffered and will continue to suffer economic and non-economic damages for which Defendant Kazimer is liable, including but not limited to mental and emotional pain and suffering, as well as punitive damages.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests the following relief from the Court.

A.    Declare that Defendants' acts and conduct constitute violations of the Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. §§ 1983.

B.    Judgment in Plaintiffs' favor as to all claims for relief.

C.    Special and general damages to compensate for the injuries Juan and his parents sustained due to Defendants' conduct including economic and non-economic damages for medical costs, pain, suffering, humiliation, and emotional distress.

D.    Punitive and exemplary damages, pre-judgment interest, post-judgment interest, costs, and other reasonable expenses incurred in maintaining this action, and the reasonable attorneys' fees and costs incurred in maintaining this action.

E.    All other relief in law or equity to which Plaintiffs are entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues within this Complaint.

Respectfully submitted,

THE CHANDRA LAW FIRM, LLC

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Donald Screen (00440770)
Ashlie Case Sletvold (0079477)
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@gmail.com
Donald.Screen@gmail.com
Ashlie.Sletvold@gmail.com

and

*[Per consent]*
Anthony D. Jordan (0066150)
Lakeside Place, Suite 420
323 Lakeside Avenue West
Cleveland, Ohio 44113
216.773.1536 Phone
216.575.7664 Fax
adj2065@msn.com

*Attorneys for Plaintiffs Juan Ortiz, Ramón L. Ortiz, and Alma I. Peréz*