IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN ORTIZ, et al. | ) | CASE NO. 1:11-CV-1521 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA GAUGHAN |
| | ) | |
| v. | ) | **DEFENDANTS' TRIAL BRIEF** |
| | ) | |
| BRIAN KAZIMER, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Defendants Brian Kazimer and Dan Crisan ('Defendants") file their trial brief in compliance with the Court's Civil Trial order.

I.      STATEMENT OF FACTS

On August 16, 2010, at 4:59:24 p.m., Cleveland police received a call from Timothy Krall reporting that he was robbed by a male who stuck a gun in his back and demanded his wallet at 14577 Lorain Avenue.  Officers Kazimer and Crisan responded and interviewed Mr. Krall, who indicated that the thief or thieves headed toward the apartments at W. 143rd Street.  At 5:30:42 p.m. Cleveland police dispatch broadcast that Ms. Nina Kennedy, apartment manager at the West Terrace Apartments on W. 143rd Street, reported two males who had turned in a stolen wallet to her approximately two minutes prior.  This gave Officers Kazimer and Crisan reason to continue investigating the robbery of Mr. Krall at West Terrace Apartments.

The Defendants had received a partial description of the men who returned the wallet to Ms. Kennedy – one male was wearing a blue t-shirt and the other male was wearing a red t-shirt and jeans.  The officers approached the apartment complex from Lorain Avenue and immediately saw a man wearing a red shirt and jeans, which matched the description provided by

1

radio dispatch.  When the man saw the police car, he ran for no apparent reason other than to elude the police.  The point at which the officers saw the suspect, now known as Juan Ortiz, he was only 100 yards away from Ms. Kennedy's location where she claimed two men had turned in the wallet.  Officer Crisan drove the police vehicle behind the apartment building to a known escape route from this location and waited for the fleeing suspect to arrive.  Officer Kazimer chased the suspect on foot, and yelled for the suspect to stop; but the suspect did not heed the officer's call and continued to flee.  Officer Kazimer's pursuit lasted twenty to thirty seconds and ended when the suspect stopped at the bottom of a hill near a group of ten people.  Officer Kazimer descended the hill at chase speed and pinned the suspect against a vehicle for a few seconds for the purposes of handcuffing him.

While Officer Kazimer was attempting to handcuff the suspect, then identified by Juan Ortiz, he was surrounded by Juan's parents and about other individuals who began to yell at him in Spanish and English.  Officer Kazimer was involved in a tense situation, with a crowd of bystanders shouting at him and attempting to intervene in the arrest.  In the confusion of the growing mass of people, Officer Kazimer did not hear the content of these shouts; however he did hear Juan's parents tell him during the struggle that Juan had Down syndrome.  Adding to the tension of this growing mass of people, Juan's parents even went so far as to try to pull him from Officer Kazimer's custody.  Officer Kazimer was eventually able to handcuff Juan and led him to his patrol vehicle and away from the mass of people to pat him down for officer safety and to inquire about the robbery.  It was not until Officer Kazimer turned Juan to face him that he realized that Juan likely had Down syndrome.  Upon this realization, Officer Kazimer released Juan from custody.  Throughout the entire detainment, Juan was calm and silent.

2

Officer Crisan was not involved in Juan's detention.  As mentioned above, Officer Crisan drove the police vehicle behind the complex to prevent the suspect's escape and remained posted there for at least five minutes until he heard over the radio that the suspect had been detained. Officer Crisan did not reappear on scene until after Juan was released to his father.  At no time on August 16, 2010, did Officer Crisan engage with Juan Ortiz or his family.

II.     **APPLICABLE LAW**

   A. **Officer Kazimer's use of force was reasonable, therefore Plaintiffs' excessive force and battery claims must fail.**

Credible evidence will show that there was no intent to apply force to Juan at the time of the detainment.  As stated above, the foot pursuit concluded at the bottom of a hill.  As Officer Kazimer came down the hill he gained speed and jostled Juan when he pinned him against the car with his hip.  This was a simple act of physics, not intent to use force.  Courts have held that police actions must be intentional in order to constitute "excessive force" under the Fourth Amendment.  *Dodd v. City of Norwich*, 827 F.2d 1 (2d. Cir. 1987), *Brice v. City of York*, 528 F. Supp.2d 504 (M.D. Pa. 2007).  There was no Fourth Amendment violation here because the officer did not intend to use force against Juan.

Regardless of the accidental nature of the force used, Plaintiffs argument of excessive force still fails because any force used would have been reasonable.  Plaintiffs allege that the force Officer Kazimer used to pin Juan against the car and apply handcuffs was excessive because Juan had allegedly surrendered.  However, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The force allegedly applied by Officer Kazimer to pin Juan

3

to the car for the purposes of restraining a suspect that had been fleeing mere moments earlier was minimal and was performed to handcuff the Plaintiff.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*  This was the type of "split-second judgment" referred to by the *Graham* Court for the purposes of inquiring into the reasonableness of the use of force to make an arrest.  There is no question that this was a rapidly evolving and tense situation.  This was a foot pursuit which ended with the suspect surrounded by approximately ten people, some of which were family, who then attempted to intervene in the arrest.  There are few things in an officer's day-to-day that one can imagine would be tenser.  It is undisputable that an officer in this situation, faced with a possible armed robber who fled on foot upon sight of the police and ran directly into a swarm of people who then attempted to stop the arrest, would use some force to effectuate the detainment.

When assessing an excessive force claim the court must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). While a number of factors go into the analysis, such as "the severity of the crime at issue [and] whether the suspect poses an immediate threat to the safety of the officer or others," *Id* at 396, "the ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006).  The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force

4

necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

The Supreme Court has instructed that the "calculus of reasonableness must embody allowance for the fact that police officers are forced to make split-second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham, supra* at 396-397.

As stated above, law enforcement officers are permitted to use the amount of force that is reasonably necessary to affect an arrest.  The Sixth Circuit has confirmed that "an officer making an arrest has 'the right to use some degree of physical coercion or threat to affect it.'" *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007), quoting *Graham*, 409 U.S. at 395-396.  In *Nichols v. Bourbon Cty. Sheriff's Dept.*, 26 F.Supp.3d 634 (E.D. Kentucky 2014), the court found that a security officer's use of force – pushing the student and taking the student to the ground – was an objectively reasonable use of force.  In that case, a high-school student refused to walk to the principal's office after an altercation with another student.  When the student resisted the security officer's instruction to move out of the area, the security officer pushed him in the direction of the office.  The officer advised the student that he was under arrest for disorderly conduct then pushed the student against the wall to be frisked.  The student pushed back off the wall, so the officer took the student to the ground to be handcuffed.  *Id*.  This is very similar to the force that was used by Officer Kazimer when he detained Juan.  Just as the student in *Fox*, refused to comply with an officer's order, Juan fled Officer Kazimer despite orders to stop.

As the Supreme Court has stated, some amount of force is reasonably used to effectuate an arrest.  *Graham*, 490 U.S. at 396.  "In an excessive use of force claim, the subjective component requires the plaintiff to show that the defendants acted 'maliciously and sadistically

5

for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline'." *Carson v. Harrington,* 12 Fed. Appx. 299 (6th Cir. 2001).  There is no credible evidence that the Defendants acted "maliciously and sadistically" when Officer Kazimer held Juan against the car and handcuffed him after having pursued him on foot to detain him for questioning.  Furthermore, there is no credible evidence that Officer Kazimer held Juan against the car for any unreasonable length of time as Officer Crisan arrived on the scene a mere five minutes after detainment and Juan was standing next to his father without handcuffs. Finally, once the foot pursuit stopped, the danger to Officer Kazimer was not eradicated.  Juan, whom Officer Kazimer believed to be an armed robber, ran into a group of approximately ten adults, a chaotic and tense scene for any police officer.

As to Juan's state-law claim of battery, as the above facts demonstrate, Officer Kazimer accidentally jostled Juan with force or, at most, was acting as a reasonable officer when he briefly detained Juan.  Officer Kazimer, as an employee of a political subdivision, is immune unless the Plaintiffs can demonstrate that Officer Kazimer acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."  R.C. § 2744.03(A)(6)(b).  As detailed above, credible evidence will demonstrate that Officer Kazimer's actions were reasonable – not malicious, in bad faith, wanton or reckless.

**B.  Officer Crisan did not fail to intervene to protect Juan Ortiz.**

As explained above, there was no excessive force or unreasonable seizure against Juan Ortiz.  Officer Crisan cannot be held liable for failing to intervene in a situation that never happened.  In addition, Officer Crisan was never on the scene when any force, even the reasonable force that actually was used, was applied to Juan Ortiz.  In order for an officer who has not been alleged to have actually exerted force on the plaintiff to be found liable for

excessive force, that officer must have had reason to know that excessive force would be or was being used, and that officer had both the opportunity and the means to prevent the harm from occurring.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  Officer Crisan's testimony demonstrates that when he arrived on scene Juan was standing next to his father and was no longer restrained in any manner.  Because there was no excessive force, or to the extent any force was used on Juan, said use of force or detention happened outside of the presence of Officer Crisan, Plaintiffs cannot sustain a complaint of a failure to intervene under 42 U.S.C. § 1983.

### C.  Plaintiff cannot recover under state law claims for negligence.

In order to recover for a negligence claim Plaintiff must show some breach of duty by Defendants.  As explained above, both Officers acted reasonably and professionally at all times and did not breach any duty to Juan or any other member of the public in their actions investigating the August 16, 2010 robbery complaint.  On the contrary, Officer Kazimer and officer Crisan would likely have been derelict in their duties as police officers had they let Juan run away without any investigation into his identity and possible knowledge or role in the robbery.  Plaintiff cannot prevail on a claim for negligence.

### D.  Plaintiff cannot recover for Negligent Infliction of Emotional Distress

"Negligent infliction of emotional distress may occur where 'the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril.' *Kulch v. Structural Fibers, Inc.* (1977), 78 Ohio St.3d 134, 162–63, 327 N.E.2d 753." *Rafalski v. Dominion East Ohio Co.,* 2011 WL 2436610 (Ohio 8 App.2011) at 5.  To the extent Juan was subjected to any "actual physical peril" was due to his own actions in fleeing from Officers.  Officer Kazimer at all times acted reasonably in his pursuit and brief detention of Juan.

7

A reasonable, although mistaken, detainment is not sufficient evidence for a claim of Negligent Infliction of Emotional Distress.  *Snyder v. U.S.*, 590 Fed.Appx. 505, 511-512 (6th Cir. 2014).

No reasonable finder of fact could conclude Officer Kazimer negligently inflicted emotional distress against Juan.  The evidence that Plaintiffs cite to as being emotional distress is simply that Juan outstretches his hands as if he were being handcuffed.  Handcuffing a person is insufficient to prove a negligent infliction of emotional distress. Plaintiffs cannot prevail on a claim for negligent infliction of emotional distress because an arrest, even if mistakenly instituted, is not actual physical peril.

Finally, Officer Kazimer, as an employee of a political subdivision is immune from claims of negligence.  As stated above, to hold an employee liable pursuant to R.C. Chapter 2744, that employee must act with malice, bad faith, or be wanton or reckless in his actions or omissions.  Plaintiff has not alleged any of these actions for the purpose of his *negligent* infliction of emotional distress claim.  As Plaintiffs' Intentional Infliction of Emotional Distress claim has been dismissed, there is no vehicle for which Juan may recover for his alleged emotional distress.

**E.  The Defendants are protected by qualified immunity.**

 In evaluating whether an officer's conduct is reasonable, the court must pay "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. at 399. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from suit unless the plaintiff shows the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The central purpose of affording public

officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Id.* 457 U.S. at 806.

Qualified immunity operates in excessive-force cases "to protect officers from the sometimes hazy border between excessive and acceptable force." *Saucier, supra* 534 U.S. at 207 (*quoting Priester v. Riviera Beach,* 208 F.3d 919, 926-927 (11th Cir. 2000)).  The evidence establishes that all Defendants at all times acted reasonably and at no time violated and right of or duty owed to Juan Ortiz.

When a police officer invokes qualified immunity, the Sixth Circuit has repeatedly stressed that the ultimate burden of proof is on the plaintiff to show that an officer is not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Scott v. Clay County*, 205 F.3d 867, 874 n. 9 (6th Cir. 2000); See also *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004); *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992); *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999).  Plaintiffs cannot meet his requisite evidentiary burden and the evidence placed before the Court at trial will well establish the Defendants are well deserving of the protections of qualified immunity.

**F.  The Defendants are protected by immunity under Ohio law.**

The Defendants are also immune from all state law claims under Ohio Revised Code Chapter 2744.  Ohio Revised Code Chapter 2744 specifically grants immunity to employees of political subdivisions for negligence claims arising out of the course and scope of the person's employment with the political subdivision. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 357.  Specifically, R.C. § 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following exceptions applies:

        i.   The employee's acts or omissions were manifestly outside the scope of his employment;

       ii.   The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

      iii.   Civil liability is expressly imposed by a section of the Revised Code.

Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

At all times the individual Defendants were acting within the scope of their employment and none of their actions or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner" as a review of the facts regarding each individual Defendant will show.  In this case, none of the alleged actions or omissions by any individual Defendant violated any rights of or duties owed to Decedent.

## III.    WITNESS LIST

In addition to the anticipated cross examination of all witnesses called to testify for Plaintiff's case in chief, Defendants reserve the right to call the following witnesses:

1. Brian Kazimer – Defendant and eyewitness to the events in question in this litigation.

2. Dan Crisan – Defendant and eyewitness to the events in question in this litigation.

3. Carlos Robles – Responding officer and eyewitness to the events in question in this litigation.

4. Christin Tobin – Responding officer and eyewitness to the events in question in this litigation.

5. Todd Melzer –Authenticate Defendants' Exhibit LL.

6. David Bender – Authenticate Defendants' Exhibits EE and audio of GG, HH, and II.

7.      Steven Mengelkamp – Authenticate transcription for Defendants' GG, HH, II, JJ, KK, and LL.

Defendants reserve the right to recall any witness called in Plaintiff's case-in-chief.

## IV.      PROPOSED EXHIBITS

Defendants reserve the right to place the following exhibits into evidence:

A through DD:  Photographs showing the location of the initial stop and the arrest.

EE.      Event Chronology

FF.      Daily Duty Report

GG.      Transcript and audio of 911 call of Mr. Krall

HH.      Transcript and audio of 911 call of Ms. Kennedy

II.      Transcript and audio of First District Radio Dispatch

JJ.      Transcript and video of Office of Professional Standards Interview of Eliezer Manzano

KK.      Transcript and video of Office of Professional Standards Interview of Ramon Ortiz, Elma Ortiz and Yahaira Acevedo

LL.       AVL of Officer Kazimer and Officer Crisan's Patrol Car

Defendants reserve the right to use any exhibits Plaintiff submits into evidence.

## V.      EVIDENTIARY ISSUES.

Defendants are filing in conjunction with this trial brief eight motions in limine. Witnesses will be presented through video-taped testimony and the Court may need to rule on objections for this video testimony prior to presentation.  One of the Defendants' authentication witnesses, David Bender, is out of town during trial and absent stipulation to authenticity by Plaintiff his testimony will need to be preserved on video.  Defendants will request a site visit for the jury to the location of the alleged incident.

## VI.    ESTIMATED LENGTH OF TRIAL

Defendants estimate trial will last 1-2 weeks.

## VII.    PROPOSED VOIR DIRE

Defendants' proposed voir dire questions are attached to this filing.

## VIII.    PROPOSED JURY INSTRUCTIONS

Defendants proposed jury instructions are attached to this filing.  Disputed instructions

are identified with an asterisk and contain separate citations to legal authority for the instruction.

## IX.    SPECIAL INTERROGATORIES/VERDICT FORMS

Defendants respectfully request that these forms be reserved for the final pre-trial as the

instructions were not admitted jointly and the final version[s] will determine the interrogatories

and verdict forms to be tendered to the jury.

Respectfully submitted,

**BARBARA A. LANGHENRY (0038838)**
**Director of Law, City of Cleveland**

**By:**    s/ Jillian L. Dinehart
**JOSEPH F. SCOTT (0029780)**
**JOHN P. BACEVICE JR. (0087306)**
Assistant Director of Law
**Jillian L. Dinehart (0086993)**
Assistant Director of Law
601 Lakeside Avenue
City Hall, Room 106
Cleveland, Ohio 44114-1077
Email: jfscld@yahoo.com
jbacevice@city.cleveland.oh.us
jdinehart@city.cleveland.oh.us
ATTORNEYS FOR DEFENDANTS
BRIAN KAZIMER AND DAN CRISAN

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing Trial Brief was filed electronically on

October 17, 2016.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

<span style="padding-left:3em;"> s/ Jillian L. Dinehart</span>
<span style="padding-left:3em;">Jillian L. Dinehart (0086993)</span>
<span style="padding-left:3em;">Attorney for Defendants</span>